UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**$299,218.48 IN UNITED STATES CURRENCY,**<br><br>**Defendant.** | No. 22-cv-3304-ZMF |

**MEMORANDUM OPINION**

The United States seeks to forfeit $299,218.48 allegedly involved in illicit sales to the Russian military in violation of the anti-money laundering statute, 18 U.S.C. § 1956(a)(2)(A). Claimant Techson Electronics, Inc. ("Techson") has claimed an interest in the funds. *See* Verified Compl. Forfeiture ("Compl.") ¶¶ 1, 7, ECF No. 1; Decl. of Thomas Tamsi ("Tamsi Decl.") ¶¶ 1–4, ECF No. 1-1. The United States moves to strike Techson's claim and answer and for summary judgment for lack of standing. For the reasons set forth herein, the Court will GRANT Plaintiff's motion.

**I.  BACKGROUND**

    A.  <u>History of the Defendant Currency</u>

On November 6, 2015, Colorado-based company Global Circuit Innovations, Inc. ("GCI") contracted to sell 7,000 to 10,000 microchips manufactured by Altera Corporation to Techson. *See* Tamsi Decl. ¶¶ 8–9; Claimant Techson Electronics, Inc.'s Answer to Complaint for Forfeiture ("Answer"), Response to Declaration of Thomas Tamsi ("Tamsi Resp.") ¶¶ 8–9, ECF No. 8 (admitting paragraphs 8 and 9). Techson is a California-based company that acquires electronic

parts in the United States on behalf of Russian clients. *See* Tamsi Decl. ¶ 8; Answer, Tamsi Resp. ¶ 8. The contract was "contingent upon an agreement that $648,000 of the total order in USD is received by GCI as a deposit prior to November 27, 2015." United States' Mot. Summ. J. Lack of Standing ("MSJ"), Responses to Special Interrogatories ("Interrogatory Responses"), Ex. A ("Contract") 1, ECF No. 15-3. Both parties characterized this deposit as a "down payment."[1] *See* Tamsi Decl. ¶ 9; Answer, Tamsi Resp. ¶ 9.

The Russian buyer transmitted the down payment to Techson in California through an intermediary. *See* Tamsi Decl. ¶ 22; Answer, Tamsi Resp. ¶ 24. Techson then paid GCI $648,000 across five transactions between December 3 and 14, 2015. *See* Tamsi Decl. ¶ 13; Answer, Tamsi Resp. ¶ 13.

On April 20, 2016, Techson asked GCI to send its Russian customer a sample of the Altera components. Tamsi Decl. at 5, ¶ 14[2]; Answer, Tamsi Resp. ¶ 14. Accordingly, Altera shipped 25 of the components to a New-York based intermediary, UIP Techno Corp. *See id.* UIP Techno then shipped them to Russia. *See id.* The components at issue are covered by the Export Administrative Regulations, which requires an exporter to file an accurate statement identifying the ultimate consignee or end user. *See* Tamsi Decl. ¶ 10; 15 C.F.R § 30.6(a)(3). On May 4, 2016, Techson's principal, Olga Andreyevskaya, signed documents attesting that the end user of the components

---

[1] Techson later attempted to retract this characterization. *See* Separate Statement of Disputed and Undisputed Facts in Support Claimant's Opp'n MSJ ("Techson's SOF") ¶ 1, ECF No. 16-1 ("Techson did not provide GCI with a 'down payment' of $648,000."). However, this attempted retraction is self-serving and implausible. *See* Section III.A.1, *infra*.

[2] The Tamsi Declaration inadvertently repeats paragraphs 14 and 15; references to either paragraph will include the page number for clarity. Later paragraphs are referenced as numbered.

was the Russian railway and that the parts would be used for commercial, civilian purposes. *See* Tamsi Decl. at 6, ¶ 14.

On May 18, 2016, GCI received an email from Nadezhda Marchenko at Aelek, a Russian-based company affiliated with the Russian military. *See* Tamsi Decl. at 6, ¶ 15, ¶¶ 17–19. Marchenko wrote that she represented the electronic components' end user and inquired about shipping times. *See id.* at 6, ¶ 15. GCI forwarded the message to Andreyevskaya at Techson, who responded that she was "shocked" and said Marchenko was "not representative of end user." Tamsi Decl. ¶ 16.; Answer, Tamsi Resp. ¶ 18 (admitting paragraph 16).

On June 10, 2016, Techson cancelled the contract due to GCI's non-performance. *See* Interrogatory Responses at 9. On June 21, 2016, Techson filed suit against GCI in California state court for breach of contract. *See* Claimant Techson Elecs., Inc.'s Opp'n MSJ ("Opp'n") 5, ECF No. 16 (citing Opp'n, Ex. 2, Decl. of Olga Andreyevskaya ("Andreyevskaya Decl.") ¶ 13, ECF No. 16-2).

In December 2016, U.S. Department of Homeland Security ("DHS") agents interviewed two Russian nationals employed by Aelek who had been attempting to illegally export electronic components through UIP Techno. *See* Tamsi Decl. ¶¶ 17–19. The Aelek employees reported that Aelek was a subsidiary of Abtronics, a Russian military equipment developer and manufacturer. *See id.* They confirmed that Marchenko worked for Aelek. *See id.* One employee claimed that Marchenko taught him how to create falsified end user documentation for U.S. items purchased for export to Russia and that he doubted any end user statements prepared by Marchenko were true. *See id.*

On October 30, 2017, DHS seized $299,218.48—$648,000 less the funds GCI had already spent in performance of the contract—from GCI as part of an illegal export scheme. *See* Tamsi

3

Decl. ¶¶ 20–21. DHS deposited these funds into an account managed by the Department of Treasury in Washington, D.C. *See* MSJ at 4.

B.    Procedural History

On January 23, 2018, Techson submitted a petition to DHS seeking remission of the seized funds. *See* Opp'n at 6 (citing Andreyevskaya Decl. ¶ 14).

On October 3, 2018, the California state court rendered judgment for Techson in its civil suit against GCI in the amount of $1,194,931.35.[3] *See* Opp'n at 6; MSJ at 4. On June 18, 2019, Techson filed a Writ of Execution in Los Angeles against GCI. *See* Opp'n at 6 (citing Andreyevskaya Decl. ¶ 16). On July 17, 2019, Techson filed an Abstract of Judgment against GCI, which it recorded with the Los Angeles County Recorder's Office on July 23, 2019. *See* Opp'n at 6 (citing Andreyevskaya Decl. ¶ 17, Ex. B).

On September 7, 2022, DHS denied Techson's petition for remission. *See* Opp'n at 6 (citing Andreyevskaya Decl. ¶ 18, Ex. C). The adjudicating officer reasoned that Techson had not established a cognizable interest in the seized funds because it "was merely acting as a straw company and passthrough for the funds" and because Andreyevskaya admitted under oath that the funds belonged to GCI. Andreyevskaya Decl., Ex. C, Letter from Clifton Simpson to Techson Electronics ("Denial Letter") 2–3, ECF No. 16-5. Moreover, "the investigation uncovered numerous parties involved in the transaction who may be the true owners of the funds, including parties with multiple aliases and parties [identified by the Department of Commerce as facilitating sanctions evasion]." *Id.* at 3.

---

[3] On or about May 6, 2019, GCI and Techson entered into an agreement to satisfy the civil judgment. *See* Claim, Ex. G, ECF No. 6-7; Opp'n at 6; MSJ at 4. The agreement provides that any funds recovered from the United States pursuant to this action will be credited towards GCI's debt owed to Techson. *See* Claim, Ex. G, at 1.

On September 12, 2022, Techson requested that the case be referred for judicial action. *See* Andreyevskaya Decl., ¶ 19. On October 28, 2022, the United States filed a verified complaint for forfeiture in rem against the seized funds. *See* Compl. On December 7 and 8, 2022, Techson filed a verified claim and an answer. *See* Claim, ECF No. 6; Answer. On February 6, 2023, the parties consented to proceed before a magistrate judge for all purposes pursuant to Local Civil Rule 73.1 and 28 U.S.C. § 636(c) and the case was referred to the undersigned. *See* Meet and Confer Report, ECF No. 11.

On June 16, 2023, the United States moved to strike Techson's verified claim and answer and for summary judgment for lack of standing. *See* MSJ. On December 11, 2023, the Court held an evidentiary hearing in which it offered Techson the opportunity to put on witnesses and proffer additional evidence in support of its claim. *See* Min. Entry (Dec. 11, 2023).

## II.   LEGAL STANDARD

"In a civil forfeiture action, the government is the plaintiff [and] the properties subject to forfeiture are the defendants in rem." *United States v. All Assets Held in Acct. No. XXXXXXXX in name of Doraville Properties Corp.*, 299 F. Supp. 3d 121, 127 (D.D.C. 2018). Any person who has an interest in the defendant asset may file a claim. *See United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency*, 859 F.3d 1085, 1088 (D.C. Cir. 2017); SUPP. R. G. 5(a)(i). Forfeiture actions are governed by statute and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* SUPP. R. G; 18 U.S.C. § 983; *$17,900.00*, 859 F.3d at 1087–88.

### A.   Summary Judgment for Lack of Standing Under Supplemental Rule G(8)

"At any time before trial, the government may move to strike a claim or answer . . . because the claimant lacks standing." SUPP. R. G(8)(c)(i)(B). "Summary judgment is appropriate only if

5

'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.* ("*Baer '23*"), No. 4-cv-0798, 2023 WL 5000213, at *6 (D.D.C. Aug. 4, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) and citing *Baumann v. District of Columbia*, 795 F.3d 209, 215 (D.C. Cir. 2015); Fed. R. Civ. P. 56(a), (c)). "[T]he Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Id.* (citing *Baumann*, 795 F.3d at 215 and *Anderson*, 477 U.S. at 255).

"[A] claimant has the burden to establish standing by a preponderance of the evidence." *$17,900.00*, 859 F.3d at 1089 (citing Supp. R. G(8)(c)). "If the non-movant's evidence is 'merely colorable' or 'not significantly probative,' summary judgment may be granted. *Baer '23*, 2023 WL 5000213, at *6 (quoting *Anderson*, 477 U.S. at 249–50). In other words, "when 'no reasonable jury could believe' a party's factual allegations (for example, if they are 'utterly discredited by the record'), a court 'should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900) in United States Currency*, 200 F. Supp. 3d 132, 138 (D.D.C. 2016) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) and citing *United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 59 (1st Cir. 2013) (refusing to credit a factual assertion in a claimant's affidavit that was "contradicted by common sense")). Holding an evidentiary hearing is one way to allow the claimant to develop the record. *See id.*; *see also United States v. Emor*, 785 F.3d 671, 675 (D.C. Cir. 2015) (permitting the claimant a hearing to determine the nature of its interest); 2006 Advisory Committee Notes to Supp. R. G(8)(c)(ii)(B) ("If material facts are disputed, precluding a grant of summary judgment, the court may hold an evidentiary hearing.").

6

B.  Constitutional Standing

"The requirements for a [claimant] to demonstrate constitutional standing to challenge a forfeiture are very forgiving." *$17,900*, 859 F.3d at 1089 (quoting *Emor*, 785 F.3d at 676). To survive summary judgment, a claimant must meet the "'some evidence' standard," which requires a claimant to "present 'some evidence of ownership' beyond the mere assertion." *Id.* at 1090. This circuit adopted the "some evidence" standard in part because "[a] more demanding standard would . . . run up against the limited opportunity claimants often have to develop the record when the government moves to strike for lack of standing." *Id.* at 1091.

That said, "unsecured creditors lack standing to contest the forfeiture of their debtors' property." *Baer '23*, No. 4-cv-798, 2023 WL 5000213, at *14 (citing *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995)). "The generalized legal interest" that unsecured creditors have in the assets of their debtors "does not equate to the necessary particularized interest in any specific asset of [the debtor] required for standing." *United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing 18 U.S.C. § 983(d)(6)(B)(i)).

**III.  DISCUSSION**

A.  The Nature of Techson's Interest in the Defendant Funds

Whether Techson has standing turns on whether it is an unsecured creditor of GCI or whether it has a "particularized interest" in the defendant funds that predates the government's seizure.[4] *Id.*; *see Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 431 (D.C. Cir. 2023) ("[S]overeign immunity bars creditors from attaching or garnishing funds in the Treasury.").

---

[4] Arguably, to prevail, Techson would have to demonstrate that its interest predated not only the seizure of funds, but their original illicit transfer. *See United States v. BCCI Holdings,*

7

In its claim, Techson described its interest as stemming from GCI's breach of contract, pursuant to which Techson had provided GCI a $648,000 "payment" that GCI refused to return. *See* Claim at 1–2; Answer, Tamsi Resp. ¶ 9 (admitting paragraph 9 of the Tamsi Declaration, which characterized the $648,000 as a "down payment"). The defendant funds are a portion of this payment. *See* Claim at 1–2. This makes Techson an unsecured creditor of GCI: Techson is owed money by GCI, but has no claim to the *specific* defendant funds. *See, e.g.*, *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.* ("*Baer '11*"), 772 F. Supp. 2d 205, 212–14 (D.D.C. 2011) (finding that a debt owed as a result of breach of contract is not an interest sufficient to confer standing); *8 Gilcrease Lane*, 641 F. Supp. 2d at 5 (distinguishing a generalized right to payment and an ownership interest sufficient to confer standing); *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003) (distinguishing an in personam judgment and a secured interest against a particular asset). This leaves Techson without standing here,[5] although it retains a breach of contract claim against GCI "for the amount of money specified in the contract between those two entities"—indeed, a claim upon which Techson acted. *Baer '11*, 772 F. Supp. 2d at 213; *see* Opp'n at 5.

---

*Luxembourg, S.A.*, 69 F. Supp. 2d 36, 60 (D.D.C. 1999) ("[T]he Government's interest in the forfeited property dates back to the time the crime occurred, and any subsequent transfers of the property between the defendant and third parties are void." (citing 18 U.S.C. § 1963(c))).

[5] "The nature of a claimant's asserted property interest in defendant assets is defined by the law of the State in which the interest arose." *Baer '11*, 772 F. Supp. 2d at 212 (cleaned up). The parties disagree as to whether Techson's interest in the funds should be determined under the law of Colorado (where GCI is based) or California (where Techson is based). *See* MSJ at 17 (arguing for Colorado law); Opp'n at 14 (arguing for California law). However, this choice of law issue need not be decided because unsecured creditors lack standing nationwide. *BCCI Holdings*, 46 F.3d at 1191 ("[A] general creditor can never have an interest in specific forfeited property.").

8

In its opposition to the United States' motion, Techson for the first time claims that it is in fact the *owner* of the defendant funds. *See* Opp'n at 10. It claims the $648,000 was not a payment. *Id.* Instead Techson claims it gave these funds "in trust" to GCI for the purpose of completing the sale; therefore, title to the funds never passed to GCI. *Id.* Techson also recasts its argument on the basis of its status as a judgment holder and a secured lienholder against GCI. *See* Opp'n at 6, 14. Each asserted interest is rejected in turn.

        1.    *Techson's Status as an Owner of the Defendant Funds Given "In Trust"*

"[W]hen a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury," the self-serving testimony is insufficient to create a genuine dispute of material fact to preclude summary judgment. *$17,900.00*, 859 F.3d at 1093 (quoting *Chenari v. George Washington Univ.*, 847 F.3d 740, 747 (D.C. Cir. 2017)). For example, summary judgment was appropriate in a forfeiture action where "(1) the record contained contradictory evidence that undermined the [witness's] claim—namely, his prior testimony; (2) the change in the [witness's] account raised an inference of fabrication;" and (3) "the [witness's] affidavit evidence was minimal bordering on conclusory." *Id.* at 1094 (analyzing *$8,440,190*, 719 F.3d at 58–59). On the other hand, summary judgment is not appropriate where claimants had "submitt[ed] extensive sworn testimony as evidence of their claim" and no evidence in the record contradicted this self-serving testimony, "let alone evidence that undermines [claimants'] account or suggests deliberate perjury." *Id.* at 1093.

Techson's sole evidence of a trust relationship is a conclusory statement in Andreyevskaya's declaration. *See* Techson's SOF ¶ 1, 3 (citing Andreyevskaya Decl. ¶¶ 4–5). In Andreyevskaya's telling:

> The $648,000 paid by Techson to GCI was to be held in trust for Techson in order to secure payment for the [electronic devices] . . . As such, only possession of funds was transferred between Techson and GCI, but not their nature or ownership.
>
> Techson had a right to request and obtain a return of its funds if performance was not obtained by GCI. The funds were specifically held as pre-payment for the [electronic devices], meaning they are held by GCI until the device is sourced, then applied against the balance owed. If no product is sourced, possession of the funds are returned to their owner, Techson.

Andreyevskaya Decl. ¶¶ 4–5.

But all other evidence belies this characterization. First, the contract memorializing the sale of the electronic devices referred to the payment as a "deposit." Contract at 1. Nowhere did the contract describe the sale as occurring "in trust" or say that title to the funds would remain with Techson. *See id.* Second, both parties' pleadings characterized the payment as a "down payment." *See* Tamsi Decl. ¶ 9; Answer, Tamsi Resp. ¶ 9 (admitting paragraph 9). Third, nowhere in Techson's claim did it describe the payment as being made "in trust." *See* Claim. Finally, the Court offered Techson a chance to corroborate its characterization of the payment as occurring "in trust" at an evidentiary hearing. *See* Min. Entry (Dec. 11, 2023). But Techson put nothing forward.

In short, all competent evidence aside from Andreyevskaya's self-serving declaration characterizes the sale of the electronic devices as simply that: a sale. *See, e.g.*, *Sturm v. Boker*, 150 U.S. 312, 329–30 (1893) ("The recognized distinction between bailment and sale is that, when the identical article is to be returned in the same or in some altered form, the contract is one of bailment, and the title to the property is not changed. On the other hand, when there is no obligation to return the specific article, and the receiver is at liberty to return another thing of value, he

becomes a debtor to make the return, and the title to the property is changed."). Meanwhile, Andreyevskaya's declaration is "only a bare assertion that [Techson] owned the property." *$17,900.00*, 859 F.3d at 1092; *see* Andreyevskaya Decl. ¶¶ 4–5. And this "minimal [declaration] bordering on conclusory" does not create a genuine issue of material fact. *$17,900.00*, 859 F.3d at 1094. Although "credibility determinations and the weighing of evidence are left to juries rather than judges," this is a case where the court 'may "lawfully put aside testimony [because it] is so undermined as to be incredible."' *Id.* (quoting *Robinson v. Pezzat*, 818 F.3d 1, 10 (D.C. Cir. 2016)); *see* Contract, Claim; Tamsi Decl. ¶ 9; Answer, Tamsi Resp. ¶ 9; Denial Letter at 2. Indeed, Andreyevskaya previously testified in the California civil suit that the defendant funds belonged to GCI. *See* Denial Letter at 2. Andreyevskaya's late-hour change as to the nature of the payment creates another basis for ignoring her testimony. *See* Denial Letter at 2; *$17,900.00*, 859 F.3d at 1094.

2. *Techson's Status as a Secured Lienholder and Judgment Holder*

Techson next argues that it has standing because it has a perfected judgment lien against the defendant funds. *See* Opp'n at 14. This argument has two fatal flaws. First, an in personam judgment "does not create any interest in particular property of the [debtor]." *See Baer '11*, 772 F. Supp. 2d at 217. Techson has no lien against the defendant funds, it has only an in personam judgment lien against GCI. *See id.*; Opp'n at 14. Thus, it is an unsecured creditor without standing. *See, e.g.*, *Baer '11*, 772 F. Supp. 2d at 212–14. Second, a lien cannot confer standing in an in rem case against specific property when the debtor no longer owned the property at the time the lien issued. *See One-Sixth Share*, 326 F.3d at 43 ("State court jurisdiction over [the asset's prior owner] would have been inadequate to confer authority for disposing of property that [the prior owner] no longer owned."). The United States seized the defendant funds in October 2017: eighteen months

11

before Techson filed the writ or recorded its judgment against GCI. *See* Compl. ¶ 3; Tamsi Decl. ¶ 21. The lien could not attach to funds that were no longer in GCI's possession. *See One-Sixth Share*, 326 F.3d at 43.

Finally, Techson's asserts that "the sufficiency of the claim must be determined when the forfeiture action is *initiated*," at which point Techson had filed the writ and recorded its judgment. Opp'n at 14. Wrong again. To confer standing in a forfeiture action, a lien must have attached to the property prior to seizure by the United States. This is because "sovereign immunity bars creditors from attaching or garnishing funds in the Treasury." *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 431 (D.C. Cir. 2023) (quoting *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 264 (1999)). Thus, Techson's claim was barred long before the government initiated this action. *See supra*.

B. Economic Harm Basis for Standing

Techson argues that it "retains a financial stake" in the defendant funds because GCI's non-performance "resulted in $345,230.50 in lost profits," causing it "substantial economic harm," which is the type of injury necessary to confer constitutional standing. Opp'n at 11. Techson relies on *United States v. Cambio Exacto, S.A.* for this proposition. 166 F.3d 522, 528 (2d Cir. 1999). But Techson reads *Cambio Exacto* far too broadly.

In *Cambio Exacto*, claimants were money transmitters—intermediaries who sent money on behalf of customers to designated recipients for a fee—and the defendant funds were customer funds seized from claimants' bank accounts. *Id.* at 524. The *Cambio Exacto* court found that the money transmitters had injury sufficient to confer standing because, whether or not they "own[ed]" the money in their accounts, they "had a liability to their customers in an amount equal to the forfeited funds." *Id.* at 528. And if the money transmitters lacked standing, "the government would

12

not be accountable to anyone under the circumstances." *Id.* Conversely, *Cambio Exacto* would "deny standing to straw owners who do indeed own the property, but hold title to it for somebody else" because "such owners do not themselves suffer an injury when the property is taken." *Calvo v. City of New York*, No. 14-cv-7246, 2017 WL 4231431, at *4 (S.D.N.Y. Sept. 21, 2017) (quoting *Cambio Exacto*, 166 F.3d at 527) (cleaned up). Although the *Cambio Exacto* court recast the ownership inquiry as an injury inquiry, the claimants there nonetheless retained a meaningful degree of ownership over the defendant funds—after all, the funds were seized from claimants' own bank accounts. *See* 166 F.3d at 524.

This case looks nothing like *Cambio Exacto*. Whereas there the government seized the funds directly from claimants' bank accounts, here it seized the funds from a third party (GCI). *See id.* The "economic harm" caused by a seizure from one's own bank account is qualitatively different than the harm caused by seizing assets from a debtor. *See id.* at 528. And the *Cambio Exacto* court's fear that the government would lack accountability should claimants lack standing does not apply here. *See id.* Another entity had standing to file a claim: GCI.

Worse, Techson's reading of *Cambio Exacto* to confer standing upon *any* claimant who suffered economic harm—no matter the nature of their interest in the seized assets—does not square with the rest of civil forfeiture law. For example, Techson's reading would confer standing upon every unsecured creditor of any entity from whom funds had been seized: such creditors suffer economic harm caused by the decreased chance that their debts will be repaid. But it is well-settled that unsecured creditors lack standing in forfeiture actions. *See Baer '11*, 772 F. Supp. 2d

at 212. In short, *Cambio Exacto* has no application to the present facts. Thus, Techson lacks standing.[6] *See id.*

## IV.    CONCLUSION

There are no refunds once the government seizes funds for money laundering.


Date: March 4, 2024

                                                        ZIA M. FARUQUI
                                                        UNITED STATES MAGISTRATE JUDGE

---

[6] The parties' dispute whether the "innocent owner" exception applies is immaterial because Techson lacks standing, a threshold issue. *See $17,900.00*, 859 F.3d at 1090.