UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**$299,218.48 IN UNITED STATES CURRENCY,**<br><br>**Defendant.** | No. 22-cv-3304-ZMF |

**MEMORANDUM OPINION**

The United States seeks default judgment in its forfeiture suit against $299,218.48 involved in illicit sales to the Russian military in violation of the anti-money laundering statute, 18 U.S.C. § 1956(a)(2)(A). For the reasons set forth herein, the Court will GRANT Plaintiff's motion.

**I.   BACKGROUND**

    A.   The Defendant Currency

The government seeks to forfeit $299,218.48 paid by Techson Electronics, Inc. ("Techson") for electronic parts that the government alleges were intended for illicit export to Russia. *See* Verified Compl. Forfeiture ("Compl."), Decl. of Thomas Tamsi ("Tamsi Decl.") ¶¶ 21–23, ECF No. 1-1. In 2015, U.S.-based Global Circuit Innovations, Inc. ("GCI") contracted to sell microchips manufactured by Altera Corporation to Techson for $648,000. *See* Tamsi Decl. ¶¶ 8–9. Techson is a California-based company that acquires electronic parts in the United States on behalf of Russian clients. *See* Tamsi Decl. ¶ 8. A Russian buyer paid Techson the $648,000 through an intermediary; Techson then paid GCI the funds. *See* Tamsi Decl. ¶¶ 13, 22.

1

In April 2016, Techson asked GCI to send its Russian customer a sample of the Altera components. Tamsi Decl. at 5, ¶ 14[1]. Altera shipped twenty-five components to a New York-based intermediary, UIP Techno Corp, which then shipped them to Russia. *See id.* The components at issue are covered by the Export Administrative Regulations, which require an exporter to file an accurate statement identifying the ultimate consignee or end user. *See* Tamsi Decl. ¶ 10; 15 C.F.R § 30.6(a)(3). On May 4, 2016, Techson's principal, Olga Andreyevskaya, signed documents attesting that the end user of the components was the Russian railway and that the parts would be used for commercial, civilian purposes. *See* Tamsi Decl. at 6, ¶ 14.

On May 18, 2016, GCI received an email from Nadezhda Marchenko at Aelek, a Russian-based company affiliated with the Russian military. *See* Tamsi Decl. at 6, ¶ 15, ¶¶ 17–19. Marchenko wrote that she represented the end user and inquired about shipping times. *See id.* at 6, ¶ 15. GCI forwarded the message to Andreyevskaya at Techson. Tamsi Decl. ¶ 16. Andreyevskaya responded that she was "shocked" and that Marchenko was "not representative of end user." *Id.*

In December 2016, U.S. Department of Homeland Security ("DHS") agents interviewed two Russian nationals employed by Aelek who had been attempting to illegally export electronic components through UIP Techno. *See* Tamsi Decl. ¶¶ 17–19. The Aelek employees reported that Aelek was a subsidiary of Abtronics, a Russian military equipment manufacturer. *See id.* They confirmed that Marchenko worked for Aelek. *See id.* One employee reported that Marchenko taught him how to create falsified end user documentation for U.S. items purchased for export to

---

[1] The Tamsi Declaration inadvertently repeats paragraph numbers 14 and 15; references to either paragraph will include the page number for clarity. Later paragraphs are referenced as numbered in the declaration.

2

Russia and that he doubted any end user statements prepared by Marchenko identified the true end user. *See id.*

On October 30, 2017, DHS seized $299,218.48—$648,000 less the funds GCI had already spent in performance of the contract—from GCI. *See* Tamsi Decl. ¶ 21. DHS then deposited the funds into a financial account managed by the Department of Treasury in Washington, D.C. *See* Mot. Default & Order Forfeiture ("Mot. Default"), Mem. Law Supp. Mot. Default ("Mem. Supp.") 4, ECF No. 26-1.

B. Procedural History

On October 28, 2022, the United States filed a verified complaint for forfeiture in rem against the seized funds. *See* Compl. In December 2022, Techson claimed an interest in the funds and filed an answer to the complaint. *See* Claim, ECF No. 6; Answer, ECF No. 8.[2] On June 16, 2023, the United States moved to strike Techson's verified claim and answer and for summary judgment for lack of standing. *See* United States' Mot. Summ. J. Lack of Standing ("MSJ"), ECF No. 15. On March 4, 2024, the Court found that Techson lacked standing as an unsecured creditor and granted summary judgment. *See United States v. $299,218.48 in U.S. Currency*, No. 22-cv-3304, 2024 WL 909927 (D.D.C. Mar. 4, 2024). No other claimants have claimed an interest in the defendant currency.

On March 22, 2024, the government requested an entry of default by the Clerk of Court. *See* Request Default Entry by Clerk, ECF No. 24. On March 29, 2024, the Clerk of Court entered default. *See* Default, ECF No. 25. In turn, the United States moved for default judgment pursuant to Federal Rule of Civil Procedure 55. *See* Mot. Default.

---

[2] On February 6, 2023, the parties consented to proceed before a magistrate judge pursuant to Local Civil Rule 73.1 and 28 U.S.C. § 636(c). *See* Meet and Confer Report, ECF No. 11.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 55 establishes a "two-step process" for obtaining default judgment. *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.* ("*Mingzheng*"), 324 F. Supp. 3d 38, 44 (D.D.C. 2018). First, when a party has "failed to plead or otherwise defend" itself against the suit, the plaintiff may seek an entry of default by the Clerk of Court. Fed. R. Civ. P. 55(a). In forfeiture actions, this means that "unless a claimant properly intervenes to raise defenses to its forfeiture, the defendant property is deemed to have 'failed to plead or otherwise defend' against the allegations, and the Clerk of Court must enter default." *United States v. All Assets Held in Acct. No. XXXXXXXX*, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) (quoting Fed. R. Civ. P. 55(a)). "Once default is entered, the defendant 'is deemed to admit every well-pleaded allegation in the complaint.'" *United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512*, 480 F. Supp. 3d 39, 43 (D.D.C. 2020) (quoting *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)).

Second, the court may enter default judgment upon the party's request. Fed. R. Civ. P. 55(b)(2). "[T]he plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Mingzheng*, 324 F. Supp. 3d at 45 (quoting *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008)). "Conceptually, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Id.* (cleaned up). "That is, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). In addition, the "higher standard of pleading" for forfeiture complaints contained in Supplemental Rule G(2), *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008)—which requires the government to "state sufficiently detailed facts to support a

reasonable belief that the government will be able to meet its burden of proof at trial," Supp. R. G(2)(f)—"may help to clarify when a civil forfeiture complaint" states a claim, *Mingzheng*, 324 F. Supp. 3d at 46 (quoting *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 (S.D.N.Y. 2010)).

## III.   DISCUSSION

Before granting default judgment, "a court should [first] satisfy itself that it has [] jurisdiction." *United States v. All Assets Held in Acct. No. XXXXXXX*, 330 F. Supp. 3d at 156 (quoting *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)). Next, "the government must show that it complied with the notice requirements contained in the Supplemental Rules." *Mingzheng*, 324 F. Supp. 3d at 46. Finally, a court must assess the adequacy of the Complaint. *See id.* at 45.

### A.   Jurisdiction and Venue

This Court has jurisdiction pursuant to 28 U.S.C. § 1345 ("[T]he district courts shall have original jurisdiction of all civil actions . . . commenced by the United States . . . ."); 28 U.S.C. § 1355(a) ("The district courts shall have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any . . . forfeiture . . . incurred under any Act of Congress . . . ."); and 18 U.S.C. § 981(a)(1)(A) (making "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. § 1956], or any property traceable to such property" subject to forfeiture). *See* Compl. ¶ 4; *see also* Compl. ¶ 7 (alleging a violation of 18 U.S.C. § 1956); *Mingzheng*, 324 F. Supp. 3d at 46.

Next, 28 U.S.C. § 1355(b) confers in rem jurisdiction over the defendant property. That statute provides that "[a] forfeiture action or proceeding may be brought in . . . the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1). "Traditionally, when exercising *in rem* jurisdiction, the defendant property

is physically present within the court's territorial jurisdiction." *United States v. All Assets Held in Acct. No. XXXXXXX*, 330 F. Supp. 3d at 156. The defendant funds are located within this court's territorial jurisdiction because DHS transferred them to an account in Washington, D.C. after their seizure. *See* Mem. Supp. at 4. Thus, the Court has in rem jurisdiction over the funds.

Section 1355 also provides for venue in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). "As the Complaint details, the Defendant Funds are subject to forfeiture because the interested parties [submitted false end user documentation to U.S. Customs and Border Protection], which is located in Washington, D.C." *Mingzheng*, 324 F. Supp. 3d at 46; *see* Tamsi Decl. ¶ 15.

B.  Notice Requirements

Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R.") G sets forth notice requirements in forfeiture actions. *See* Supp. R. G(4). The government must provide both general notice by publication and direct notice. *See id*.

First, "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." Supp. R. G(4)(a)(i). That notice must "(A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer." Supp. R. G(4)(a)(ii). "Published notice must appear . . . once a week for three consecutive weeks," Supp. R. G(4)(a)(iii), and may be accomplished by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days," Supp. R. G(4)(a)(iv)(C).

Less than one week after the government filed the Complaint, it published notice of the forfeiture action on www.forfeiture.gov for 30 consecutive days describing the defendant property,

the timeline to file a claim and answer, and the government attorney to serve. *See* Decl. Publication, ECF No. 19; *See* Request Default Entry by Clerk, Aff. of Rajbir S. Datta ("Datta Aff.") ¶ 19. This satisfied the publication requirement in Supplemental Rule G. *See United States v. Twenty-Four Cryptocurrency Accts.*, 473 F. Supp. 3d 1, 5 (D.D.C. 2020).

Second, "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim." Supp. R. G(4)(b)(i). The notice must include the date, deadline for filing a claim and answer or Rule 12 motion, and name of the government attorney to be served. *See* Supp. R. G(4)(b)(ii). Such notice "must be sent by means reasonably calculated to reach the potential claimant." Supp. R. G(4)(b)(iii)(A).

The government identified all known potential claimants—Techson, LLC Normandia, and GCI— and mailed them direct notice between November 3, 2022 and December 8, 2022. *See* Datta Aff. ¶¶ 13–16. The government's attorney attested that the mailed notice complied with Supplemental Rule G(4)(b). *See id.* This satisfied the direct notice requirement in Supplemental Rule G. *See United States v. $3,435,935 of Funds From Al-Naser Airlines*, No. 15-cv-1687, 2024 WL 1141610, at *3 (D.D.C. Mar. 15, 2024). Thus, the government has satisfied all notice requirements in Supplemental Rule G. *See id.*

C.  Adequacy of the Complaint

"Supplemental Rule G includes five relevant elements that must be included in a complaint in an action for forfeiture *in rem*. Four of these are largely formal, and one is substantive." *Mingzheng*, 324 F. Supp. 3d at 48. Formally, "the complaint must be verified; state the basis for subject matter jurisdiction, jurisdiction over the property, and venue; describe the property with reasonable particularity; and identify the statute under which the forfeiture is sought." *Id.* (citing

Supp. R. G(2)(a)–(c), (e)). "Here, those provisions are met." *Id.* The Complaint is verified, *see* Compl.; states the basis for jurisdiction and venue, *see* Compl. ¶¶ 4–6; describes the specific property, *see* Compl. ¶ 2–3; and identifies the statutes under which forfeiture is sought as 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(A), *see* Compl. ¶ 7.

Substantively, the Complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). As set forth by the government, the defendant funds are the remainder of the funds paid to GCI by Techson on a contract for electronic parts that were intended for shipment to Russia. *See* Tamsi Decl. ¶ 21. The parts were covered by the Export Administrative Regulations, which require the exporter to file information accurately identifying the parts' ultimate consignee or end user. *See* Tamsi Decl. ¶ 10. Techson's principal signed documents identifying the end user as a company affiliated with the Russian Railway. *See* Tamsi Decl. at 6, ¶ 14. However, an individual (Nadezhda Marchenko) at a different Russian company (Aelek) then got in contact with GCI, claiming to be the parts' end user. *See* Tamsi Decl. at 6, ¶ 15. Although Techson's principal claimed that she was "shocked" at Marchenko's assertion of ownership, *see* Tamsi Decl. ¶ 16, separate information revealed Marchenko to be practiced at falsifying end user documentation and to be affiliated with the Russian military, *see* Tamsi Decl. ¶¶ 18–20. A Russian witness who worked with Marchenko claimed that she trained him to prepare falsified end user documentation for items purchased in the United States and that he doubted any end user statements prepared by Marchenko's company identified the exports' true end user. *See* Tamsi Decl. ¶ 17–19. Techson and Marchenko also relied on the same New York-based intermediary. *See* Tamsi Decl. at 5, ¶ 14, ¶¶ 17–19. For her part, Techson's principal told DHS in an interview only that she had conducted the transaction at issue

at the direction of a third party who assisted her company in finding Russian customers for American merchandise. *See* Tamsi Decl. ¶ 22.

These facts support a reasonable belief that the government would have been able to meet its burden of proof at trial. *See* Supp. R. G(2)(f). The International Emergency Economic Powers Act ("IIEPA") criminalizes willful violations of a regulation issued under the IEEPA. *See* 50 U.S.C. § 1705(a). One such regulation instructs that "[n]o person may make any false or misleading representation, statement, or certification . . . [i]n connection with the preparation, submission, issuance, use, or maintenance of any 'export control document' or any report filed or required to be filed pursuant to the EAR." 15 C.F.R. § 764.2(g)(1)(ii). And the international money laundering statute prohibits the transfer of currency from outside to inside the United States with the intent to promote violations of the IEEPA. *See* 18 U.S.C. § 1956(a)(2)(A). The government could reasonably prove at trial that the initial transfer of funds came from Techson's buyer in Russia to Techson in the United States and promoted a violation the IEEPA: the end user documentation prepared by Techson's principal was false and misleading by listing a falsified end user, violating 15 C.F.R. § 764.2(g)(1)(ii). The defendant funds are the portion of those funds that remained in GCI's possession after it attempted to fulfill the contract. *See* Tamsi Decl. ¶ 21. Thus, the defendant funds are "property . . . involved in a transaction or attempted transaction in violation of [the international money laundering statute, 18 U.S.C. § 1956], or any property traceable to such property," 18 U.S.C. § 981(a)(1)(A), so are "subject to forfeiture to the United States," 18 U.S.C. § 981(a)(1).

## IV. CONCLUSION

The government has 99 problems, but $299,218.48 isn't one.

Date: July 16, 2024

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE